## Goehring's Appeal

*Lawrence M. Sebring* and *J. Frank Kelker,* for appellant.

*John D. Ray,* for appellee.

SOHN, J., June 5, 1946.—William B. Brown, burgess of the Borough of Rochester, by written notice, suspended George F. Goehring, chief of police. The notice received by Goehring April 2, 1946, charged him with "inefficiency, insubordination, loafing while on duty, and no control of subordinates". On April 3, 1946, Goehring, by letter addressed to Clifford H. Betz, chairman of the Rochester Police Civil Service Commission, demanded a hearing. He requested notice of the time and place of hearing and that a hearing be fixed at the commission's earliest convenience. The commission fixed April 10, 1946, at 7:30 p.m. as the time of hearing. Goehring and his counsel appeared at the hearing. His motion to dismiss the proceedings because borough council had taken no action on the suspension was refused. Under date of April 15, 1946, G. A. Bentel, secretary of the commission, advised Goehring, in writing, that the commission had unanimously decided Goehring should be suspended for 30 days and reduced from the rank of chief of police to patrolman. It is admitted that borough council took no action relative to the matter at any time.

On April 17, 1946, Goehring moved to quash the action of the commission alleging that since council had not acted on the suspension, it was improper, unlawful, invalid and without effect and not in accord with the law. A rule was issued on the commission to show cause why Goehring should not be reinstated. On the same day an appeal was taken to the court of common pleas from the order of the commission suspending and reducing Goehring in rank.

In view of the conclusion we have reached in this case, and the need for an opinion clarifying the procedure in this type of case, we are disposing of this matter on the appeal from the action of the commission. Our decision makes it unnecessary to pass upon the motion to quash. The act provides for review by

the court on appeal. We conclude the legislature intended that the court should consider the evidence taken before the commission and such additional proof or testimony as appellant may desire to offer. We believe, under the act, it is the duty of the court to weigh the testimony taken before the commission and before the court and reach its conclusion as to the charges preferred against appellant. The act provides that the case shall be determined (by the court of common pleas) as the court deems proper. We do not believe the legislature intended the court to be bound by findings of fact made by the commission.

Section 1125 of the General Borough Act of May 4, 1927, P. L. 519, as amended by the Act of June 24, 1939, P. L. 689, provides in part:

"Borough councils may appoint and remove one or more suitable persons, citizens of this Commonwealth, as borough policemen, . . . The borough council may designate one of said policemen as chief of police. The burgess of the borough shall have full charge and control of the chief of police and the police force, and he shall direct the time during which, the place where, and the manner in which the chief of police and the police force shall perform its duties."

The amendment of 1939, sec. 3, authorizes council to name a chief, captain, lieutenant, sergeants and other classifications, and designate the individual assigned to each office but the burgess shall continue to direct the manner in which they shall perform their duties.

Section 1127 of the act provides:

"The burgess may, for cause and without pay, suspend any policeman until the succeeding regular meeting of the council, at which time the council may discharge or reinstate such policeman."

In Haverford Township et al. v. Siegle, 346 Pa. 1, the Supreme Court declared the Police Civil Service Act of June 5, 1941, P. L. 84, constitutional. The Borough

of Rochester has a police force of five members, therefore this case comes within the provisions of that act. Section 1 of the act reads in part:

"The provisions of this act and of any amendments or supplements thereto shall be in effect as to boroughs, only while sections 1125, 1127 and 1128 as now contained in 'The General Borough Act' are in force, subject, however, to the method of appointment and removal hereinafter provided."

Section 2 of the act creates a civil service commission, and section 20 forbids the suspension, removal or reduction in rank of any police department employe except for one of the following reasons:

"(1) physical or mental disability affecting his ability to continue in service, in which cases the person shall receive an honorable discharge from service;

"(2) neglect or violation of any official duty;

"(3) violation of any law of this Commonwealth which provides that such violation constitutes a misdemeanor or felony;

"(4) inefficiency, neglect, intemperance, disobedience of orders or conduct unbecoming an officer;

"(5) intoxication while on duty;

"(6) engaging or participating in the conducting of any political or election campaign otherwise than to exercise his own right of suffrage."

Police officers can be removed from their position only if their disability or conduct comes within the reasons hereinbefore specified.

The reasons assigned by Burgess Brown for the suspension in this case can, if proven, be construed to charge a violation by the chief of police of the standard of conduct required by sections 2 and 4 of the act. It would, however, be conducive to more orderly procedure if the officer were charged with an offense as set out in the act and then to specify the particular conduct which is the basis of the suspension. In this way

the accused may be more definitely informed as to the charge against him and council and the commission may conduct the hearing in a more orderly manner.

Section 21 of the act gives persons sought to be suspended, removed or reduced in rank the right to demand a hearing before the commission and to be reinstated in the event the charges are not upheld. In this case it is admitted that council did not take any action, at its succeeding regular meeting on April 15, 1946, relative to the suspension by the burgess. From the record it would appear that council and the commission assumed the provisions of sections 1125 and 1127 of the General Borough Act were impliedly repealed by the Police Civil Service Act of 1941, and after suspension by the burgess the commission, upon demand, was required to hold a hearing and adjudicate the suspension. We do not understand this to be the proper procedure under the law. Goehring evidently was under the same impression because he instituted the hearing by making written demand to the commission for a hearing. We think this action was premature. At the argument it was contended that Goehring, in requesting a hearing before council acted on his suspension, had waived his right to have council pass upon the burgess' suspension. His demand for a hearing, however, could not impair his rights under the law. Apparently the members of the commission, the council and Burgess Brown were under the same misapprehension.

In Bragdon v. Ries, 346 Pa. 10, the Supreme Court decided that the Police Civil Service Act did not repeal sections 1125 and 1127 of the General Borough Act; that the latter sections were in full force and effect and there was no conflict in the two acts:

"A close comparison of the two acts discloses the fact that under the Act of 1941 the power of the burgess remains unchanged, and that the power of council to appoint and remove remains but with the prescribed

limitations that appointment can be made only from a list furnished by the civil service commission and that discharge can result, if the employee asks a hearing, only if the charges against him are sustained by the commission. Thus it is apparent that the Act of 1941 does not aeprive council of the power to appoint and remove, nor the burgess of the power to suspend, but merely prescribes and limits the conditions under which these powers may be exercised. By its terms it is to be in effect while sections 1125 and 1127 of the General Borough Act are in force, 'subject, however, to the method of appointment hereinafter provided.' This is a flat recognition of those sections of the General Borough Act and of their qualification as to the method of appointment and removal of employees set up in the Act of 1941. There is thus no conflict in the two acts."

This decision is cited in Dauber's Case, 151 Pa. Superior Ct. 293, and the court held the Act of 1941 in conjunction with the General Borough Act prescribed the procedure which must be followed in dismissing police officers from service in a borough.

The suspension by the burgess and suspension and reduction in rank by the commission without action by council cannot deprive appellant of his position. Section 1127 of the General Borough Act reserves discharge or reinstatement to the council. Until council has acted, an appeal to, or action by, the civil service commission is premature. The duties of the commission arise after council has acted. Until council acts on the suspension by the burgess, the policeman is not removed from his position by intervening action of the commission. If a police officer is suspended by the burgess and council takes no action at its next regular meeting, the suspension expires and the police officer retains his position: Grumblis v. Borough of Luzerne, 33 Municipal Law Reporter 252.

Much of the uncertainty as to procedure has resulted from the manner in which the Act of 1941 was drawn. Section 20 provides in part:

"A written statement of any charges made against any person so employed shall be furnished to such person within five days after the same are filed."

With what body shall the charges be filed? We hold this refers to the charges made by the burgess at the time of suspension, and the charges shall be filed with council. Section 21 provides in part:

"If the person sought to be suspended, removed or reduced in rank shall demand a hearing by the commission, the demand shall be made to the commission. Such person may make written answer to any charges filed against him. The commission shall grant him a hearing which shall be held within a period of 10 days from the filing of charges in writing and written answers thereto filed within five days and may be continued by the commission for cause, or at the request of the accused."

This provision relates to the procedure after council has acted. The charges in writing referred to in this section are those to be filed with the commission by the burgess or council after council has acted and the accused has appealed to the commission for a hearing.

We therefore hold the proper procedure to be:

1. Suspension of the accused by the burgess, who shall file with council the reasons for the suspension, and council shall notify the accused of the charges against him;

2. At the succeeding regular meeting council shall suspend, remove, reduce in rank or reinstate the accused: Kravitski v. James, 26 Municipal Law Reporter 129;

3. The accused may demand a hearing before the police civil service commission, in which event the burgess or council shall prefer written charges and file

them with the commission and furnish a copy to the accused; he shall answer these charges in writing within five days after service upon him and the commission shall hold a hearing within 10 days from the filing of the charges against him;

4. Accused may appeal by petition to the court of common pleas within 60 days from the date of entry by the commission of its final order.

We do not decide that a police officer can be suspended, removed or reduced in rank only if the proceeding is instituted on suspension by the burgess. Under the law, prior to the Act of 1941, council could appoint and remove a policeman even though the burgess took no action. If council had power to appoint and remove, it could likewise reduce in rank or suspend. If this power were questioned, prior to the Civil Service Act, council might have accomplished its purpose to suspend by removing a policeman and rehiring him at a later date. Likewise it might have reduced him in rank by removing him and rehiring him immediately in a reduced position. Suspension and reduction in rank are inherent in the power to appoint and remove. Since the enactment of the Act of 1941 such action by council would, however, be subject to review by the police civil service commission upon application by the accused. Under section 1127 of the General Borough Act, the burgess *may* for cause and without pay, suspend; section 21 of the Police Civil Service Act provides the *appointing officer* or burgess may suspend, and later in the same sentence refers to suspension, removal or demotion. Council could take action on its own motion and its action would be reviewable by the commission upon request of the accused. Council, of course, is not continuously in session and a temporary suspension would be within the power of the police committee of council, if council gave such authority to its committee. If suspension were by a committee with delegated

power, final action must be by council at the succeeding regular meeting.

We believe the procedure heretofore outlined is consistent with both acts and the decisions of the courts and advantageous to all parties in interest. We have carefully examined all the cases construing the Act of 1941 we have located, or which were cited by counsel, and we find nothing in them inconsistent with this opinion. The case of Smith v. Rowland, 353 Pa. 142, seems to indicate the procedure outlined herein was there followed.

We have read the record of the proceedings before the commission in this case, as well as the testimony offered on the appeal. We do not base our conclusion on the facts in this case, but on the conclusion that George F. Goehring, chief of police of Rochester Borough, was not suspended and reduced in rank in the manner provided by the law of this Commonwealth. Reaching this conclusion, our opinion as to the facts is not the basis of our decision in this case. George F. Goehring, not having been legally suspended and reduced in rank, is the chief of police of the Borough of Rochester, and entitled to be paid salary as chief of police for any period during which such salary has been withheld, by the Borough of Rochester.

The Act of 1941 was passed for the purpose of taking the police out of politics and assuring those policemen who properly performed their duties continuity of employment. The Supreme Court has approved this legislation. The municipalities designated in the act will comply with its provisions.

The law imposes definite duties and obligations on police officers. Police officers are public servants. The public is entitled to protection by men who are physically and mentally able, zealous in the performance of their duties, law-abiding, efficient, active, temperate, who obey orders of their superiors, conduct themselves properly and who do not engage in political campaigns.

The law affords no assurance of continued employment to those who fail in these duties.

This court has, from time to time, received complaints charging failure on the part of the police officers to properly police establishments licensed to sell liquor within their municipality. Police in our county seem to assume that the proper policing of these establishments is the duty of agents of the Pennsylvania Liquor Control Board. Similar complaints are received from time to time relative to gambling. It seems to be assumed by local police that the State police and county detectives should make all arrests on these charges. Both conclusions are erroneous. It is the duty of local police officers to enforce the law and maintain order within their municipality and their duties include the arrest and prosecution of all offenders against the law within their jurisdiction. Police officers must understand that the Police Civil Service Act assures them continued employment only so long as their conduct is such as is required by law.

It is the duty of a burgess and the members of council to require their police officers to meet the standards of conduct and service required by law. These municipal officers should take appropriate action against any police officer who does not perform his duties as required by the Police Civil Service Act. On appeal, the commission and the court will consider the testimony offered and determine whether by his conduct an accused officer has failed to comply with the requirements of law as provided in the Act of 1941. If the burgess or council has evidence to prove a police officer's performance of his duties contrary to the standard required in that act, specific evidence of such conduct should be offered.

The procedure in this case was not in compliance with the law and the accused will therefore be reinstated to his position as chief of police.