551 A.2d 297

**Annie WILLIAMS and Wayman D. Williams**

v.

**A–TREAT BOTTLING COMPANY, INC. and Pavlish Beverage Company.**

**Appeal of PAVLISH BEVERAGE COMPANY.**

Superior Court of Pennsylvania.

Argued Aug. 30, 1988.

Filed Dec. 12, 1988.

196

Edward McKarski, Bethlehem, for appellant.

Before CAVANAUGH, BROSKY and MONTEMURO, JJ.

BROSKY, Judge:

This is an appeal from the Order of December 23, 1987, which denied appellant's post-trial motions and entered judgment upon the non-jury verdict in wife-appellee's favor.

Appellant now contends that the trial court erred: (1) in denying appellant's motion for a compulsory nonsuit, when neither wife-appellee nor counsel for wife-appellee were present at trial, and no evidence was presented in her case-in-chief; (2) in denying appellant's motion for judgment non obstante verdicto (n.o.v.), when no evidence was entered in wife-appellee's case-in-chief, and insufficient evidence was introduced in husband-appellee's case-in-chief, to support the verdict; (3) in denying appellant's alternative motion for a new trial; and (4) in failing to enter a verdict against appellant's co-defendant, based upon appellant's cross-claim against the co-defendant.

Upon review of the record, and appellant's brief [1] we find merit to appellant's second contention, and accordingly reverse and enter judgment n.o.v.

On January 10, 1984, wife-appellee, Annie Williams, purchased one case of "Up" soda, bottled by A–Treat Bottling

1. Neither appellees, nor appellant's co-defendant, A–Treat Bottling Company, Inc., have filed a brief in this matter.

Company, Inc. ("A–Treat"), from appellant, Pavlish Beverage Company ("Pavlish"). Later that day, she drank some of the soda directly from the bottle, and noticed that the soda had an unusual taste. She detected no cracks, or wear about the bottle, or its metal top. However, upon mentioning the strange taste to her husband, he mentioned that he smelled kerosene, and told her not to drink the remainder of the bottle. Approximately forty-five (45) minutes later, she began to have stomach pains.

She went to the emergency room of a nearby hospital in the early morning hours of January 11, 1984. Her stomach was not pumped, but the emergency room physicians, Doctors Twottle and Wyshock, performed blood tests, the results of which were normal, with no kerosene detected. After giving her an antacid and an antispasmodic, the physicians discharged her, instructing her to see her family physician if her stomach pain persisted.

Her pain persisted, and she went to see her family physician on January 12, 1984, who gave her some medication, and instructed her to return to the hospital that day in order to have her stomach pumped.

She did not return to the hospital until the early morning hours on January 14, 1984. She was attended to by the emergency room physician that night, Dr. Anthony Sorrentino. Again, blood tests were performed. Her stomach was pumped as well, and the contents analyzed. Neither the blood tests nor the stomach contents revealed any trace of kerosene in her system. Again, she was treated with an antacid, and released.

In the meantime, the bottle of soda from which she allegedly drank the kerosene, was turned over to the police for analysis. After one phone call, at which time the results were not yet available, Mrs. Williams made no further attempt to obtain the results of the analysis.

On December 18, 1985, Mr. and Mrs. Williams filed a complaint against appellant Pavlish and A–Treat. A nonjury trial was held on March 18, 1987. Neither Mrs. Williams, nor counsel for Mr. and Mrs. Williams appeared

at trial. Mr. Williams alone appeared, averring that Mrs. Williams had suffered a stroke, and that he wished to represent his wife. The trial court prohibited him from entering any evidence on her behalf, but permitted him to enter evidence in support of his consortium claim. Mr. Williams then entered the deposition of his wife and of Dr. Sorrentino into evidence. He also called George Pavlish, the owner of Pavlish, to testify in support of his consortium claim. George Pavlish testified that the kerosene heater on the premises had malfunctioned and put soot into the air, but that the kerosene could not have gotten into the soda bottles, even if the caps had been cracked, without getting underneath the cap.

At the close of Mr. Williams' evidence, Pavlish moved for a nonsuit on the basis that no evidence had been entered in Mrs. Williams' case-in-chief. The trial court denied the motion, and both defendants rested without entering any evidence. The court returned a verdict in favor of Mrs. Williams only, and against Pavlish, awarding her five hundred dollars ($500.00) for her inconvenience in having to seek treatment at the hospital. Pavlish's post-trial motions, requesting judgment n.o.v. or a new trial, and challenging both the denial of nonsuit, and the failure of the trial court to enter a verdict against A–Treat upon Pavlish's cross-claim, were denied. This timely appeal followed.

Appellant's first contention on appeal is that the trial court erred in denying the motion for nonsuit, as neither wife-appellee, nor counsel, appeared to enter any evidence presented on her behalf. Appellant maintains that the denial of its motion for nonsuit is appealable, as appellant rested at trial without introducing any evidence, and, as such, appellant makes several arguments as to why that denial was improper.

■ Without addressing the merits of those arguments at this time,[2] we note that appellant is incorrect that the

2. Appellant makes the same arguments with respect to the trial court's denial of its motion for judgment n.o.v., and, hence, we shall be

refusal to enter a nonsuit under these circumstances is appealable.

Appellant cites *Burns v. City of Philadelphia,* 350 Pa.Super. 615, 504 A.2d 1321 (1986), in support of its position. *Burns,* however, merely stands for the proposition that a defendant's presentation of evidence following the denial of defendant's motion for nonsuit renders the correctness of that denial a moot issue. *Id.,* 350 Pa.Superior Ct. at 623, 504 A.2d at p. 1325. From this, appellant surmises that a defendant's decision to rest without presenting evidence keeps the nonsuit issue alive on appeal. However, prior to *Burns,* it had already been resolved that the denial of a motion for compulsory nonsuit is not appealable, even when the defendant elects to present no evidence. See *Churilla v. Barner,* 269 Pa.Super. 100, 409 A.2d 83, 85 (1979). Moreover, since *Burns,* this Court, in *Fleck v. Durawood, Inc.,* 365 Pa.Super. 123, 529 A.2d 3 (1987), has reiterated the pre-*Burns* rule of appealability as follows:

> .... The first issue on appeal is whether the trial court erred in not granting appellant's motion for nonsuit and motion for judgment n.o.v., since appellant urges there was no evidence from which the jury could have found against Sears. The trial court properly noted that the propriety of the court's action in not granting a motion for a nonsuit is not appealable. What is appealable is the trial court's Order denying a motion for judgment notwithstanding the verdict (Slip Op., Wallace, J., 3/5/87) (citing *Elder v. Orluck,* 334 Pa.Super. 329, 483 A.2d 474 (1984)....

*Id.,* 365 Pa.Superior Ct. at 126, 529 A.2d at pp. 4–5.

As appellant's second contention challenges the trial court's denial of its motion for judgment n.o.v., and incorporates by reference the arguments made pertaining to the court's refusal to grant a nonsuit, we shall follow the guidance provided in *Fleck,* and refrain from further discus-

addressing those arguments *infra* as they pertain to contention (2) only.

sion of the nonsuit issue, while proceeding to consider whether judgment n.o.v. should have been entered.

In maintaining that judgment n.o.v. was warranted, appellant argues: (a) that wife-appellee's alleged illness was not confirmed by medical testimony, and hence her absence from trial was not properly excused by the trial court; (b) even if her absence was properly excused, the evidence received on behalf of her husband, who could not act as her attorney, could not form the basis of a verdict in her favor; and (c) even if her husband's evidence could be considered on her behalf, that evidence was insufficient to support a verdict in her favor.

While appellant's arguments (a) and (b) are flawed, we find merit to (c).

■ With respect to the failure of husband-appellee to present any medical testimony verifying his wife's illness, the Rules of Civil Procedure do not require the production of such testimony before the deposition of an allegedly ill or infirm witness may be introduced into evidence; the decision on the sufficiency of proof of unavailability is within the trial court's discretion, and, once the trial court is satisfied that the witness is unavailable, the witness's deposition may be admitted as substantive evidence. See Pa.R. C.P. 4020(a)(3)(c); Goodrich Amram 2d § 4020(a): 7, n. 69. As such, the trial court was free to accept husband-appellee's assertion that his wife was too ill to appear, as credible, and was thereby free to admit her deposition as substantive evidence in husband-appellee's consortium case.

■ Likewise, appellant is incorrect in stating that the trial court acted improperly in considering husband-appellee's evidence as it pertained to wife-appellee's case. It is certainly true that husband-appellee was precluded from acting as his wife's attorney, as such would have constituted the unauthorized practice of law. See 42 Pa.C.S. § 2524; *Dauphin County Bar Association v. Mazzacaro*, 465 Pa. 545, 351 A.2d 229 (1976); *Shortz v. Farrell*, 327 Pa. 81, 193 A. 20 (1937). However, the trial court certainly did not

violate its duty to remain impartial, as is suggested by appellant's brief, in considering husband-appellee's evidence as it pertained to his wife's claim.

While it is said that the party with the burden of proof has the burden of "going forward with the evidence", this does not mean that a party may satisfy his burden of production only with that evidence he himself introduces. The burden of production may be satisfied with the evidence introduced by the party with the burden, or by any other party, and the trial court is free to consider all the evidence in determining whether the party with the burden has satisfied the burden. See *Hrivnak v. Perrone*, 472 Pa. 348, 372 A.2d 730, 732 (1977) (party is entitled to benefit of all affirmative facts helpful to his case, regardless of party introducing such testimony); *Devlin v. Piechoski*, 380 Pa. 146, 110 A.2d 241, 243 (1955) (evidentiary value of crucial document no less effective because it came into the case through the defendant rather than the plaintiff); McCormick on Evidence (2d. ed.1972), § 337, p. 786; Packel, L. and Poulin, A.B., Pennsylvania Evidence (1st ed.1987), § 302, p. 53. Hence, once husband-appellee had presented his evidence, the trial court was permitted to consider that evidence to determine if wife-appellee was entitled to a recovery. While such action may have been unorthodox, in light of the failure of wife-appellee to appear, it was neither improper nor erroneous.

■ This, then, brings us to appellant's sufficiency argument.

Our scope of review upon the denial of a motion for judgment n.o.v. has been outlined many times as follows:

> The standard which we employ when reviewing the denial of a motion for directed verdict and a motion for judgment n.o.v. is the same. We will reverse the lower court when we find "an abuse of discretion or an error of law which controlled the outcome of the case." *McDevitt v. Terminal Warehouse Co.*, 304 Pa.Super. 438, 442, 450 A.2d 991, 993 (1982). In ruling upon these motions, the trial judge must consider "the evidence, together with all

reasonable inferences that may be drawn therefrom ... in the light most favorable to the verdict winner." *Carrender v. Fitterer*, 310 Pa.Super. 433, 436, 456 A.2d 1013, 104 (1983). Accepting as true all facts and proper inferences which tend to support the contention of the party against whom the motion has been made, and rejecting all testimony and inferences to the contrary, the trial judge must grant said motions when no two reasonable minds could differ that, as a matter of law, the party has failed to make out his case. *Thomas v. Allegheny & Eastern Coal Co.*, 309 Pa.Super. 333, 455 A.2d 637 (1982).

*Fleck*, supra, 365 Pa.Superior Ct. at 126–127, 529 A.2d at p. 5, citing *Timbrook v. Foremost Insurance Co.*, 324 Pa.Super. 384, 471 A.2d 891, 892 (1984).

Our review of the evidence entered in husband-appellee's consortium claim convinces us that, viewing that evidence in the light most favorable to wife-appellee, it is nonetheless insufficient to uphold a recovery in her case.

It is beyond dispute that, regardless of whether an action for physical harm caused by an allegedly defective or unsafe product sounds in negligence or in strict liability, there must be some proof that the product was indeed unsafe, and caused damages to the plaintiff. See *Macina v. McAdams*, 280 Pa.Super. 115, 421 A.2d 432, 434 (1980) (one element of negligence is "reasonably close causal connection between the conduct and the resulting injury"); also see also *Thompson v. Anthony Crane Rental, Inc.*, 325 Pa.Super. 386, 473 A.2d 120, 125 (1984) (plaintiff can recover under strict liability if he proves "that a product was defective when delivered to the buyer and that the defect caused the plaintiff's injuries"). This is so, even where the recovery sought or obtained is solely for the plaintiff's inconvenience in having to seek medical care to determine whether he has been injured. *Macine*, supra.

In the matter *sub judice*, there simply does not exist one shred of evidence, in the form of either lay or expert testimony, that any kerosene was ever found in or on the soda bottle, or that wife-appellee ever ingested kerosene,

much less that appellant somehow caused kerosene to be present in or on the bottle.

While Pavlish himself did admit to the presence of a malfunctioning kerosene heater on his business premises, he also testified emphatically that it was not possible that kerosene had gotten into the soda, as even in the event of a cracked cap, the kerosene would have had to intrude underneath the cap onto the lip of the bottle. (N.T., March 18, 1987, pp. 17–18).

Furthermore, wife-appellee admitted in her own deposition that she had not noticed any cracking or wear about the bottle top, and had not placed any portion of the bottle into her mouth, but had only touched the bottle top (heretofore covered by the cap) to her lips. (D.T., October 31, 1986, pp. 15–16). She also admitted that she had never obtained the results of the police analysis of the bottle contents, and did not know if kerosene had been discovered. (D.T., pp. 34–35.)

Lastly, despite wife-appellee's assertions as to what she was told at the hospital, Dr. Sorrentino indicated in his deposition that, at no time was any kerosene detected in either her bloodstream or her stomach contents, and that any finding of kerosene would have been noted in the medical records. (D.T., December 8, 1986, pp. 7–9, 13–15, 22–25.) Any mentions of kerosene or "toxin" ingestion in those records were based purely upon wife-appellee's subjective complaints that she had ingested kerosene. (D.T., pp. 20–22.)

 As such, the evidence introduced in husband-appellee's consortium claim contains an overwhelming amount of evidence contradictory to wife-appellee's theory of recovery, countered only by husband-appellee's detection of the odor of kerosene,[3] and wife-appellee's subjective, unsubstantiated insistence that her gastritis resulted from kerosene ingestion. While the verdict winner is entitled to a favor-

---

**3.** Even husband-appellee's perceptions carry little weight, as appellees possess a kerosene heater, and wife-appellee could not recall in her deposition whether they had owned the heater in 1984. (D.T., p. 17.)

able light, all affirmative facts helpful to his case, and all reasonable inferences thereof, he may not recover on the basis of evidence which is diametrically opposed to the facts alleged in support of his theory of recovery.[4] *Hrivak,* supra. Where the only facts in evidence in support of the theory of recovery would require speculation and conjecture to find in the plaintiff's favor, the evidence is insufficient to support the verdict. *Farnese v. Southeastern Pennsylvania Transportation Authority (SEPTA),* 338 Pa.Super. 130, 487 A.2d 887, 890 (1985).

Even discounting all contradictory evidence, an award of any kind in wife-appellee's favor, based upon the ingestion of kerosene, would be pure speculation and conjecture. Hence, we now reverse the trial court, and enter judgment n.o.v. in appellant's favor.[5]

Order reversed and judgment n.o.v. entered. Jurisdiction is relinquished.

---

4. In fact, a party is bound by his opponent's testimony when introduced in the party's case-in-chief where that testimony is neither contradicted nor inherently incredible. *Stack v. Wapner,* 244 Pa.Super. 278, 283–284, 368 A.2d 292, 295 (1976). Hence, wife-appellee was bound by Pavlish's testimony that the kerosene could not have possibly gotten into the soda bottle.

5. In light of our resolution, we needn't reach appellant's third and fourth contentions on appeal.